IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 7 |
| JOSHUA M. SWAFFORD ) | |
| KRYSTAL K. SWAFFORD, ) | |
| ) | |
| Debtors ) | Bankruptcy No. 15-01577-C |
| ) | |
| ) | |
| JOSHUA M. SWAFFORD ) | |
| KRYSTAL K. SWAFFORD, ) | |
| ) | |
| Plaintiffs, ) | Adversary No. 16-09012 |
| ) | |
| vs. ) | |
| ) | |
| JOHN B. KING ) | |
| DEPARTMENT OF EDUCATION ) | |
| ASPIRE RESOURCES, INC., ) | |
| ) | |
| Defendants, ) | |
| ) | |
| EDUCATIONAL CREDIT ) | |
| MANAGEMENT CORPORATION, ) | |
| ) | |
| Intervenor. ) | |

**RULING ON DISCHARGEABILITY OF STUDENT LOANS**

This matter came before the Court for hearing in Cedar Rapids, Iowa.

Steven G. Klesner appeared for Debtors Joshua and Krystal Swafford ("Debtors").

Matthew C. McDermott appeared for creditor Aspire Resources, Inc. ("Aspire").

Brooke Suter Van Vliet appeared for creditor Educational Credit Management

1

Corporation ("ECMC").  Martin J. McLaughlin appeared for John B. King and the United States Department of Education ("DOE").  Aspire, ECMC, and DOE are referred to collectively as "Creditors".  This is a core proceeding under 28 U.S.C. §157(b)(2)(I).

## STATEMENT OF THE CASE

Debtors Joshua and Krystal Swafford are married and have three dependent children.  Joshua is employed and earns approximately $4,125 per month before taxes.  Krystal has either been unemployed or worked part-time as a waitress since the birth of their first child.  Debtors list their expenses as approximately $3,500 per month.  Joshua owes on one student loan to ECMC with a principal of $45,270.27; one student loan to DOE with a principal of $17,050.31; and six separate student loans to Aspire of various amounts totaling over $70,000.  Krystal has one student loan with the DOE with a principal of $17,471.69.

Debtors claim that continuing to pay the student loans would cause them an "undue hardship."  Debtors seek to discharge all the student loans.  Creditors claim that discharge of Debtors' student loans is unnecessary.  Creditors argue there is no undue hardship because Debtors are eligible for Income Based Repayment (IBR) plans, can cut non-essential expenses, and have a relatively long and capable future working life.

For the following reasons, the Court finds that under the "totality of the circumstances" test, Krystal's student loan imposes an undue hardship and is dischargeable, Joshua's student loans with ECMC and DOE impose an undue hardship and are therefore dischargeable, and the Court further finds that three of Joshua's six loans with Aspire would pose an undue hardship and therefore are dischargeable. The Court finds the three remaining loans Joshua has with Aspire do not impose an undue hardship and therefore are not discharged.

## STATEMENT OF THE FACTS

Debtors, who are in their mid-30s, live in Mediapolis, Iowa with their three dependent children. Currently, Krystal is unemployed and stays home with their children. Joshua has a job at US Gypsum he has held for over 5 years. He has received incremental promotions and related pay raises. His current income is approximately $49,500 before taxes and deductions. However, he is unlikely to get another promotion any time soon. In fact, he will probably receive a small pay cut if he switches to first shift so he can spend more time with the family. Krystal has worked minimally over the last seven to ten years, occasionally working part time as a waitress.

Joshua Swafford has a Bachelor's Degree in Psychology from Loras College. To fund his undergraduate education, he received student loans from Nelnet (ECMC's assignor) and Aspire (previously Iowa Student Loan). After

obtaining his degree, Joshua worked for Optimae Life Services. He made between $32,000 and $36,000 annually. Joshua made relatively consistent payments on his student loans between 2008 and 2011.

In 2012, Joshua left Optimae. Both he and Krystal enrolled in a nursing program at Southeastern Community College. They thought they could both have better employment and make more money by completing the nursing degree. Both Krystal and Joshua borrowed from the DOE to finance this program. After completing their pre-requisites, however, each of them failed a required introductory level course. They both dropped out and did not pursue the program further because they would be required to restart the program and repeat the classes they have already taken—not simply the class they failed. After withdrawing from the nursing program, Joshua obtained his current job with US Gypsum. Krystal has stayed home with their children.

Their current mortgage is approximately $525 per month (though there is some discrepancy between the petition, exhibits, and bank statements surrounding this expense). They borrowed from Joshua's father for the down payment, and must repay that loan.

Krystal is unemployed and does the bulk of the childcare. Krystal has two additional children from before her marriage to Joshua. She owes child support for her daughter who lives in Iowa City and is with Debtors on alternating weekends.

Joshua has paid Krystal's child support obligation for her daughter. Krystal also owes child support for her son who lives in Ohio. There are multiple issues surrounding custody of him and claims for child support and arrearages. This obligation has resulted in garnishments, which have taken a large portion of any paychecks she got from periodic waitressing jobs. She expects that this garnishment would continue if she got a new job. This makes any attempt by her to work more of a family and financial burden than real help. Given all these factors, Debtors believe it is nearly impossible to get out of this financial hole.

## CONCLUSIONS OF LAW AND ANALYSIS

Under the Bankruptcy Code, student loan debt is generally non-dischargeable unless "excepting such debt from discharge… would impose an **undue hardship** on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8) (emphasis added). In creating this provision, Congress "intended to prevent recent graduates who were beginning lucrative careers and wanted to escape their student loan debt from doing so." Long v. Educ. Credit Mgmt. Corp. (In re Long), 322 F.3d 549, 554 (8th Cir. 2003). The Code does not define "undue hardship" but courts have devised their own tests for meeting this standard. Conway v. Nat'l Collegiate Trust (In re Conway), 495 B.R. 416, 419 (B.A.P. 8th Cir. 2013).

The Eighth Circuit uses a "totality of the circumstances" test for determining whether there is "undue hardship". This differs from the majority of circuits, which have adopted what is known as the Brunner test. Brunner v. New York State Higher Educ. Servs. Corp., 831 F.2d 395 (2d Cir. 1987). The Brunner test imposes a higher burden, requiring a debtor to show that repaying her student loans would force her and her dependents below a "minimal standard of living". Long, 322 F. 3d at 554 (citing Brunner) (internal quotations omitted). Conway, 495 B.R. at 419; Martin v. Great Lakes Higher Educ. Group (In re Martin), 584 B.R. 886, 891 (Bankr. N.D. Iowa 2018). Under the "totality of the circumstances" test, however, debtors must prove, by a preponderance of the evidence, that continuing to be obligated to their student loans would impose an undue hardship. Educ. Credit Mgmt. Corp. v. Jesperson, 571 F.3d 775, 779 (8th Cir. 2009).

The Court examines debtors' undue hardship argument "on the unique facts and circumstances that surround the particular bankruptcy." Long, 322 F.3d at 554. The Court evaluates three factors when deciding whether discharge is appropriate: "(1) the debtor's past, present, and reasonably reliable future financial resources; (2) the debtor's reasonable and necessary living expenses; and (3) any other relevant facts and circumstances." Id. The court will consider each of these factors in the analysis that follows.

6

After applying the totality of the circumstances test, the Court determines what loans, if any, can be discharged. The Eighth Circuit does not allow for partial discharge of a debtor's total student loan debt. Martin, 584 B.R. at 890; see also Thad Collins, Forging Middle Ground: Revision of Student Loan Debts in Bankruptcy as an Impetus to Amend 11 U.S.C. 523(a)(8), 75 Iowa. L. Rev. 733, 735–37 (1990). Where debtors have multiple student loan obligations, however, the Court is allowed to analyze each loan and "determine whether each loan, separately, imposes an undue hardship and may discharge some loans while declining to discharge others." Martin, 584 B.R. at 890–91.

The Debtors here have several, separate student loans. The Court will apply the three-part "totality of the circumstances" framework, and then determine whether or not repaying each loan imposes an undue hardship.

**A. Debtor's Past, Present, and Reasonably Reliable Future Financial Resources**

The first factor in the "totality of the circumstances" test is the Debtors' "past, present, and reasonably reliable future financial resources." Long, 322 F.3d at 554. Joshua and Krystal have separate student loan obligations. Thus, their income will be addressed separately. Joshua has a Bachelor's Degree in Psychology. He originally worked in psychology related employment with Optimae Life Services. He worked for Optimae for roughly 2 years. He has not

7

since pursued any other employment in a field that requires his degree because of inadequate pay and the need to support his family.

Joshua attempted to go back to school and complete a nursing degree. While pursuing this degree, he worked part-time with Pizza Hut as a delivery driver. After completing his prerequisites during the first year of the program, he narrowly missed passing a required introductory class. In order for him to pursue that degree further, he would need to repeat the entire program, not just the one class he narrowly failed. Given his family obligations, he does not have the time or financial ability to do so. Upon withdrawing from the nursing program, Joshua obtained employment with US Gypsum and is still presently employed there. His employment at US Gypsum gives Joshua a higher income and more consistent schedule than his prior jobs.

Joshua began at US Gypsum in October of 2014. His job title was Operator 1. He has received occasional promotions from Operator 1 up through Operator 5 with corresponding pay increases. As an Operator 5, Joshua's monthly income is approximately $4,125 before taxes and deductions. It is roughly $2,800 per month after such deductions. Joshua testified that although it would be possible for him to get another promotion, it is unlikely. Not only would that require selection of him by the foreman, he would also need mechanical ability to work on and repair the relevant machines. Joshua does not have that skill set.

Joshua also noted he, like many plant workers, is looking to move to first shift for the family-friendly hours. His current pay likely would decrease marginally if his application for first shift is approved.

Joshua's income is not likely to increase in any meaningful way for the foreseeable future. After taxes and withholdings, it currently covers most of the necessary household expenses but not much more. Joshua makes a few hundred dollars in extra income throughout the year as a sports announcer. These opportunities, however, are seasonal and very limited. While there may be some possibility for cost-of-living increases in his income, there will not be enough for Joshua to make significant payments on all eight loans. The likelihood of a minimum material increase in future income, particularly when compared to current expenses, thus weighs in favor of discharging one or more of Joshua's loans.

Krystal is not currently working. She stays at home providing childcare for her and Joshua's three children. Over the past six years, Krystal has had on and off employment as a waitress at minimum wage. She has generally received a net take-home pay (after garnishment for child support) of less than $200 for two weeks of work. Krystal has not completed any higher education. Like Joshua, she entered the nursing program but failed a key class, and would have to repeat the

entire program, not just the one failed class, if she wanted to pursue employment in the field for which she borrowed for education.

With little experience other than waitressing, Krystal is unlikely to find a job that would pay her a wage that would add meaningfully to the family income. This is particularly true considering that for a substantial number of years into the future, the family will need to pay for child care if she works. Krystal will still be facing extensive garnishment for the child support owed toward her son. Even if Krystal were to return to work in the future, after all three children are of school age, it is unlikely that she will generate enough income to pay garnishments and child support obligations and still have income left over to pay towards her student loan. These facts weigh in favor of discharging Krystal's loan.

### B. Debtor's Reasonable and Necessary Living Expenses

Under the second factor of the "totality of the circumstances" test, the Court considers whether Debtor's expenses are reasonable and necessary. Long, 322 F.3d at 554. If "the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt-while still allowing for a minimal standard of living-then the debt should not be discharged." Jesperson, 571 F.3d at 779 (8th Cir. 2009) (quoting Long, 322 F.3d at 554).

Debtors live together with their daughters and they have shared household expenses. Joshua's income provides for the payment of their mortgage, utilities,

food costs, transportation expenses, healthcare expenses, and entertainment/recreational expenses.  Joshua testified that he tends to buy separate groceries/food, usually involving the Schwan's home delivery, apart from Krystal and the children.  This separate buying is due to different food preferences.

Debtors have the following monthly expenses:

| | |
|---|---|
| Mortgage | $525.00 |
| Utilities | $729.00 (Including cell phone, Netflix, Sling TV, etc) |
| Food | $750.00 |
| Housekeeping | $75.00 |
| Personal Care | $75.00 |
| Miscellaneous | $200.00 (Including entertainment) |
| Transportation | $625.00 (Operating) |
| Transportation | $287.00 (Ownership) |

Joshua also pays Krystal's child support obligation of $245.00 per month for her daughter that lives with them on alternating weekends.  Krystal owes additional child support for her son in Ohio.  Debtors have had difficulty obtaining information about the monthly payment obligations and any arrearages, but those expenses exist.

Joshua conceded there could be some cost-savings if the household purchased joint groceries and did not use Schwan's deliveries.  Debtors have eaten out frequently, sometimes rising to the cost of $400 in a particular month.  Joshua also has a large cell phone expense, especially considering that Krystal does not have a cell phone.  Debtors acknowledged their transportation expenses account for various repairs on one or more vehicles, but are not a regular monthly expense.

Debtors also admitted they attend and watch wrestling events for Joshua's brothers and one of the Swafford's daughters. Debtors use a portion of their income tax return to pay for hotel, food, and transportation expenses related to these wrestling events. Joshua also pays for a subscription streaming service to access various wrestling events.

While these additional expenses are not lavish or unreasonable per se, there are some opportunities for reduction. "Provided that total expenses remain minimal, the debtor is not expected or required to implement every conceivable cost-saving measure." Limkemann v. U.S. Dep't. of Educ. (In re Limkemann), 314 B.R. 190, 195 (Bankr. N.D. Iowa 2004). Here, there is certainly room to reduce expenses that go beyond a minimal standard of living. The Court finds it would be fair to expect Debtors to do so here. This factor weighs against discharge of Debtors' entire student loan obligation. However, there is not enough opportunity for reduction to allow for payment of all eight loans.

**C. Other Relevant Facts and Circumstances**

The third factor of the "totality of the circumstances" test allows the Court to evaluate any other facts and circumstances relevant to determining undue hardship. Long, 322 F.3d at 554. The main factor the Creditors ask the Court to consider here is whether or not discharge is necessary in light of the Income Based Repayment (IBR) plans that are available to Debtors. Martin, 584 B.R. at 893.

These IBR plan payments would be set at $0 based on Debtors' current income. Payments would only increase if their monthly income rises to a level allowing them to make payments in the future. Further, under an IBR plan, the total amount of the debt would be cancelled after 20–25 years, regardless of how much money Debtors had paid toward the loans. Creditors believe the availability of these plans cuts strongly against discharge here.

"[E]ligibility for income-based repayment plans is 'one factor in [the totality of the circumstances] analysis.'" Martin, 584 B.R. at 893–94 (quoting Fern v. FedLoan Servicing (In re Fern), 553 B.R. 362, 369–71 (Bankr. N.D. Iowa 2016), aff'd 563 B.R. 1 (B.A.P. 8th Cir. 2017). When considering IBR plans in the totality analysis, the Court considers whether the debtors can make significant payment under the plan and any additional hardships the plans may impose. Fern, 553 B.R. at 369. These additional hardships may include: the continuing growth of the total debt (due to deferral of payment) over the course of the plan, the debtor's ability to obtain future credit, and the mental and emotional impact on the debtor of the mounting debt. Martin, 584 B.R. at 894.

The current IBR payment on Debtors' loans would be $0. This fact, combined with the Court's earlier findings that Debtors' income is unlikely to increase in a meaningful way in the future, means that the overall student loan debts are likely to grow—not diminish—over time. The growth is likely to be

faster than Debtors would be able to repay, even assuming they develop some ability to pay in the future. Debtors testified that the knowledge of the mounting debt takes a heavy emotional and mental toll on them. They believe it has contributed, in part, to their recent marital instability. On balance, the availability of IBR plans here is not a significant factor in favor of finding against discharge.

The Court also must evaluate other unique factors of the "totality of the circumstances" test. Krystal's situation, for example, differs from Joshua's. Krystal's loan with DOE has a principal of $17,471.69. She got virtually no value or greater earning capacity from the education she received. Krystal's inconsistent work history and experience makes it unlikely that she will ever have any disposable income to pay towards an IBR plan, or otherwise reduce household expenses or the balance of her loan. This is particularly true considering that she has continuing child support obligations that cause her to face garnishment even if she were more consistently employed. If Krystal were ever to face the household expenses by herself, it is unlikely that she would be able to cover them, even if she were to obtain full-time employment. Based on these factors and others described previously, the Court finds that Krystal has established undue hardship and thus is entitled to discharge of her student loan with DOE.

The Court must also consider the "totality of the circumstances" as applied to each of the loans owed by Joshua: $45,270.27 with ECMC; $17,050.31 with

14

DOE; and six loans with Aspire totaling almost $75,000, which at the time of trial were itemized by disbursement date as:

| | | |
|---|---|---|
| Dec. 11, 2016 | - | $2,661.51 |
| Nov. 16, 2005 | - | $23,451.55 |
| Nov. 17, 2004 | - | $10,760.60 |
| Sep. 13, 2004 | - | $12,469.97 |
| Oct. 3, 2003 | - | $14,413.83 |
| Sep. 24, 2002 | - | $10,520.03 |

Unlike Krystal, Joshua has consistent employment and work history with a steady weekly income. His income though, is not likely to increase materially over time. The Court has concluded that there are reductions Debtors can reasonably make to food and entertainment related expenses. Thus, the Court finds Joshua could realistically have some disposable income to put toward repayment of student loans.

As noted above, in cases of multiple student loans, Courts must "determine whether each loan, separately, imposes an undue hardship and may discharge some loans while declining to discharge others." Martin, 584 B.R. at 890–91. The Court has applied this analysis and specifically finds the minimal level of disposable income Joshua can generate with spending reductions, will not cover eight different loans. The parties have offered no guidance on what the law requires or the facts warrant on picking the loans that do and do not present an undue hardship. The Court finds that Joshua, through income and cost reductions, can repay the three smallest loans (Dec. 11, 2016: $2661.51; Nov. 17, 2004:

$10,760.60; and Sep. 24, 2002: $10,520.03) held by Aspire without imposing an undue hardship on him. Therefore, Joshua is not entitled to discharge of those three loans. Repayment of the other three loans with Aspire totaling over $50,000, however, would impose an undue hardship on Debtors and those loans are dischargeable.

The Court further concludes that the remaining two larger loans, held by ECMC and DOE, would also impose an undue hardship on Joshua. Those two loans, therefore, will also be discharged.

## CONCLUSION AND ORDER

**WHEREFORE**, Krystal Swafford's student loan held by DOE is DISCHARGED.

**FURTHER**, Joshua Swafford's student loan held by DOE is DISCHARGED.

**FURTHER**, Joshua Swafford's student loan held by ECMC is DISCHARGED.

**FURTHER**, Joshua Swafford's student loans held by Aspire (Nov. 16, 2005: $23,451.55; Sep. 13, 2004: $12,469.97; and Oct. 3, 2003: $14,413.83) are DISCHARGED.

**FURTHER,** Joshua Swafford's student loans held by Aspire (Dec. 11, 2016: $2,661.51; Nov. 17, 2004: $10,760.60; and Sep. 24, 2002: $10,520.03) are NOT DISCHARGED.

**FURTHER**, judgment shall enter accordingly.

Dated and Entered:

July 10, 2019

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE